# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOE LEE BROWN,** | ) | |
| **AIS #00308577,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:20-00550-KD-N** |
| | ) | |
| **GUY NOE,** *Warden III,* | ) | |
| *St. Clair Correctional Facility,* | ) | |
| **Respondent.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Joe Lee Brown, an Alabama prisoner proceeding through counsel, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 on November 17, 2020 (Doc. 1). In response to the Court's prior orders (Docs. 2, 4), Brown refiled his petition on December 17, 2020, using the Court's required form (Doc. 5).[1] As stated in prior orders, the Court deems the December 17 petition (Doc. 5) as the operative habeas petition under review in this action. The assigned District Judge referred Brown's operative petition to the undersigned Magistrate Judge for appropriate action. *See* S.D. Ala. GenLR 72(b); (12/17/2020 electronic reference notation). Under S.D. Ala. GenLR 72(a)(2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a

---

[1] *See* S.D. Ala. CivLR 9(a) ("All persons applying or petitioning for release from custody under 28 U.S.C. § 2241 or 28 U.S.C. § 2254 … must file their … petition … with the Clerk using forms available from the Court."); Rule 2(d) of the Rules Governing Section 2254 Cases in the United States District Courts ("The petition must substantially follow either the form appended to these rules or to a form prescribed by a local district-court rule.").

complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of the petition, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

After conducting preliminary review of the operative petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the undersigned ordered the Respondent to file an answer or other appropriate response. (*See* Doc. 7). The Respondent timely filed an answer (Doc. 11) to the operative petition under Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, and a supplemental answer (Doc. 14) in response to a court order (Doc. 13). Brown then timely filed a reply to the answer and supplemental answer. *See* (Doc. 18); Rule 5(e) of the Rules Governing Section 2254 Cases in the United States District Courts.

Upon review of the operative petition, the answer, the supplemental answer, the transcripts and records of the state-court proceedings, and the reply, the undersigned concludes that an evidentiary hearing is not warranted, *see* Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts, and that Brown's operative habeas petition is due to be **DENIED** and **DISMISSED with prejudice**, without an evidentiary hearing.[2]

---

[2] No party has moved for discovery or expansion of the record under, respectively, Rules 6 and 7 of the Rules Governing Section 2254 Cases in the United States District Courts, and the undersigned finds no cause to grant either *sua sponte*.

# I. BACKGROUND

After being convicted of murder in violation of Ala. Code § 13A-6-2 by a jury in the Circuit Court of Choctaw County, Alabama (Case No. CC-15-35), Brown was sentenced to life in prison without the possibility of parole under the state's habitual felony offender law on April 3, 2017. (*See* Doc. 11-15, PageID.1882). On May 3, 2017, Brown, by then represented by new counsel, filed a motion for new trial (Doc. 11-5, PageID.584-588), which the State opposed (*see id.*, PageID.597-598). The motion for new trial was deemed denied by operation of law after the trial court failed to timely rule on it within the time set by Alabama Rule of Criminal Procedure 24.4

On direct appeal, the Alabama Court of Criminal Appeals ("ACCA") affirmed Brown's conviction and sentence in an unpublished memorandum opinion (*see* Doc. 11-15), then summarily overruled Brown's application for rehearing (*see* Doc. 11-17). On July 13, 2018, the Alabama Supreme Court denied Brown's petition for certiorari review of the ACCA's decision (*see* Doc. 11-23). Brown did not seek further review on direct appeal with the United States Supreme Court.

On July 11, 2019, Brown, through present counsel, filed a petition for post-conviction relief under Alabama Rule of Criminal Procedure 32 with the Choctaw County Circuit Court, raising 8 claims for relief. (*See* Doc. 11-27, PageID.2259). After the State of Alabama moved to dismiss Brown's Rule 32 petition, the circuit court summarily denied the petition on September 5, 2019. (*See id.*, PageID.2260). The ACCA affirmed the denial in an unpublished memorandum opinion (Doc. 11-27), then summarily overruled Brown's application for rehearing of that decision (*see* Doc. 11-

29). The Alabama Supreme Court denied certiorari review of the ACCA's decision on October 16, 2020 (*see* Doc. 11-31). Brown initiated the present counseled habeas proceedings on November 17, 2020. (*See* Doc. 1).

## II.   ANALYSIS

### a.   STANDARDS OF REVIEW

Because Brown's habeas petition was filed after April 24, 1996, it is subject to application of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1281 (11th Cir. 2012). "Under AEDPA, if a petitioner's claims have been 'adjudicated on the merits in State court,' a federal court cannot grant habeas relief unless the state court's adjudication of the claims (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Hittson v. GDCP Warden*, 759 F.3d 1210, 1230 (11th Cir. 2014) (quoting 28 U.S.C. § 2254(d)). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement. If this standard is difficult to meet—and it is—that is because it was meant to be.  [Federal courts] will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal

habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19-20, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (internal citations and quotations omitted). *See also Woods v. Donald*, 575 U.S. 312, 316 135 S. Ct. 1372, 191 L. Ed. 2d 464 (2015) (per curiam) ("AEDPA's standard is intentionally ' " ' difficult to meet. ' " ' " (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 133 S. Ct. 1781, 1786, 185 L. Ed. 2d 988 (2013)))).

The United States Supreme Court has

explained that " 'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U.S., at ——, 134 S. Ct., at 1702 (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.*, at ——, 134 S. Ct., at 1702 (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a "presumption that state courts know and follow the law." *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*). When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra,* at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 575 U.S. at 316.

Finally, "AEDPA instructs that, when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it

was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Burt v. Titlow,* [571] U.S. [12], 134 S. Ct. 10, 15, 187 L. Ed. 2d 348 (2013) (quoting 28 U.S.C. § 2254(d)(2)). In such cases, "[t]he prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.' " *Id.* (quoting 28 U.S.C. § 2254(e)(1)). Like the "unreasonable application" standard in § 2254(d)(1), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question ... that does not suffice to supersede the [state] court's determination." *Id.* (alterations and quotation marks omitted).

*Hittson*, 759 F.3d at 1230.

When the last state court to decide a prisoner's federal claim does not provide a reasoned explanation for denying relief, generally "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning[,]" unless the State can "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Wilson v. Sellers*, -- U.S. --, 138 S. Ct. 1188, 1192, 200 L. Ed. 2d 530 (2018).

### b.   CLAIMS FOR RELIEF

Brown's petition asserts seven claims, none of which merit relief.

## CLAIM 1 – Ineffective Assistance of Counsel for Failure to Impeach Trial Witness Janice Young

At trial, Brown called as a witness Janice Young, who testified that she saw Brown near the body of the victim, Jeremy James, when she and two other individuals came upon it. However, Brown claims that Young denied seeing him near the body during a pretrial interview with an investigator for Brown's trial counsel. In his first claim for relief, Brown argues that his trial counsel was ineffective for failing to either call the investigator to impeach Young with her prior inconsistent statement, or to "introduce this statement." This claim is without merit.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).

"Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address

both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland* test is not easily met; … 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson*, 256 F.3d at 1176 (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters*, 46 F.3d at 1518. *Accord, e.g.*, *Burt*, 571 U.S. at 24, ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance…"). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that … the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence,"…in order to prove deficient performance, "a petitioner must establish that no competent counsel

would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002).

"The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competency determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (citing *Strickland*, 466 U.S. at 689-91) (citations and quotations omitted). Moreover, "for claims of ineffective assistance of counsel,…AEDPA review must be " ' "doubly deferential" ' " in order to afford "both the state court and the defense attorney the benefit of the doubt." *Woods*, 575 U.S. at 316 (quoting Burt, 134 S. Ct. at 13 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011))).

"In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is reasonably likely the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Here, Brown has not shown that his counsel erred in not impeaching Young because Brown himself, not the prosecution, called Young as a witness. Under Alabama law, "[i]t is axiomatic that a party may not impeach his own witness." *DeFries v. State*, 597 So. 2d 742, 748 (Ala. Crim. App. 1992). "When the testimony of a witness is adverse to the party who called the witness, it is proper for the trial court to allow that party, either for the purpose of proving surprise or to refresh the witness's recollection, to question the witness regarding prior inconsistent statements." *Hamilton v. State*, 520 So. 2d 155, 161 (Ala. Crim. App. 1986), *aff'd sub nom. Ex parte Hamilton*, 520 So. 2d 167 (Ala. 1987). *See also Garth v. State*, 536 So. 2d 173, 176 (Ala. Crim. App. 1988) ("A party who has been surprised by a witness may lead or cross-examine that witness in order to refresh the witness's recollection or to show the surprise of the party who has called the witness."). "Counsel may not

impeach such a witness, however, by calling other witnesses to testify as to the witness's prior inconsistent statements." *Garth*, 536 So. 2d at 176.

Brown's trial counsel therefore would have been violating established Alabama precedent by attempting to call his investigator to impeach her on her alleged prior inconsistent statements. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (counsel "is not ineffective for failing to raise claims reasonably considered to be without merit" (quotation omitted)); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (per curiam) ("Failing to make a meritless objection does not constitute deficient performance."). Moreover, Brown cannot claim that his trial counsel was entitled to question Young regarding her prior inconsistent statements because he was "surprised" by her trial testimony, since the record indicates that Brown's counsel was aware prior to trial that Young would testify she saw Brown in the vicinity of the victim's body. Specifically, in a pretrial discovery motion filed October 3, 2016, Brown's counsel noted that Donald Lolly, an investigator with the Choctaw County District Attorney's Office, testified at the preliminary hearing in Brown's murder case "that Young identified Mr. Brown standing over or near the body of Mr. James." (Doc. 11-3, PageID.336). There is also no indication in the trial transcript that Young was confused or misremembering things, such that Brown's counsel would have been entitled to use her inconsistent statement "to refresh [her] recollection." Rather, it appears that Brown's trial counsel called Young for the purpose of confronting her with her alleged inconsistent statement made to his investigator. However, Alabama law is clear that "[t]he accused may not elicit from

his own witness testimony that the witness has made a prior statement for the avowed purpose of impeaching the witness with the inconsistent statement." *DeFries*, 597 So. 2d at 748.[3]

## CLAIM 2 – *Brady* Violation

In his second claim for relief, Brown alleges that the trial court violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and its progeny, by refusing to order the prosecution to produce police statements given by two other individuals who were with Young when she discovered the victim's body, and who "did not mention Mr. Brown being observed standing over the body…" (Doc. 5, PageID.62). This claim is without merit, and is also procedurally barred.

---

[3]     For what it's worth, the trial transcript indicates that trial counsel did attempt to impeach Young regarding prior inconsistent statements. After Young testified that she saw Brown in the vicinity of the victim's body, trial counsel began asking her whether it took multiple interviews with law enforcement officials before Young mentioned seeing Brown near the body. (*See* Doc. 11-10, PageID.1594-1598). However, the trial judge sustained the prosecution's objection to this line of questioning, and denied defense counsel's request to have Young declared "a hostile witness." (Id., PageID.1597-1598).

Brown relies primarily on *Nixon v. Newsome*, 888 F.2d 112 (11th Cir. 1989), in arguing Claim 1. However, as the Respondent correctly points out, *Nixon* is readily distinguishable because in that case the Georgia petitioner's trial attorney was found ineffective for failing to impeach a *prosecution* witness regarding inconsistent statements. In so holding, the panel pointed out that under Georgia law, the witness's "prior inconsistent statement could have been admitted not merely for impeachment purposes but as substantive evidence." *Nixon*, 888 F.2d at 115–16 (citing *Gibbons v. State*, 286 S.E.2d 717 (Ga. 1982)). Alabama law, on the other hand, is clear that a criminal defendant cannot impeach a witness he has called. *Cf. Wellington v. Moore*, 314 F.3d 1256, 1260–61 (11th Cir. 2002) (a petitioner must cite a "decision in which the United States Supreme Court, faced with materially indistinguishable facts, reached a decision different from the state court" to warrant relief).

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). Here, even assuming the satisfaction of the first two factors, Brown cannot reasonably show that prejudice ensued from the suppression of the other witnesses' statements. Young was the only trial witness that testified to seeing Brown at the scene of the crime. However, as has been previously noted, Brown, not the prosecution, called Young as a trial witness, and Alabama law is clear that "a party may not impeach his own witness." *DeFries*, 597 So. 2d at 748. Because Brown would not have been able to use the other witnesses' statements to impeach Young, and because the prosecution presented no witnesses who could have been impeached by the other witnesses' statements, Brown could not have used the statements at trial even if they had been disclosed.

Additionally, the undersigned agrees with the Respondent that Brown's *Brady* claim is procedurally barred. "A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (per curiam) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)). "Such procedural default can arise…where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal

claims are barred…" *Id.* In such cases, "the federal court [must] respect the state court's decision[, so long as] the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar, i.e., an adequate and independent state ground." *Id.* at 1302-03. *Accord Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) ("A state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim. *See Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990). However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon 'independent and adequate' state ground.").

The ACCA expressly affirmed the denial of Brown's *Brady* claim in his Rule 32 proceedings under Alabama Rule of Criminal Procedure 32.2(a)(5), which, subject to an inapplicable exception, precludes relief "based upon any ground…[w]hich could have been but was not raised on appeal..." (*See* Doc. 11-27, PageID.2262). The Eleventh Circuit Court of Appeals has indicated that Rule 32.2(a)(5) is an "adequate and independent state ground" for denying a claim that bars relief in subsequent federal habeas proceedings. *See Holladay v. Haley*, 209 F.3d 1243, 1254 & n.9 (11th Cir. 2000). Brown offers no argument why that ground was not adequate and independent,[4] nor does he attempt to show cause and prejudice to excuse the

---

[4] *See Judd*, 250 F.3d at 1313 ("In *Card v. Dugger,* 911 F.2d 1494 (11th Cir.1990), we established a three-part test to enable us to determine when a state court's procedural ruling constitutes an independent and adequate state rule of decision. First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the

procedural default of this claim.[5] While he does attempt to excuse the default by claiming that he is "actually innocent" of his crime of conviction, as will be explained later, Brown has failed to make a sufficient showing of actual innocence to excuse procedural default.

## CLAIM 3 – Ineffective Assistance of Counsel Due to Failure to Make Timely Disclosure of Defense DNA Expert

Jury selection was set to begin on March 6, 2017. On February 25, 2017, Brown's trial counsel filed a "Notice of Intent to Utilize Testimonty [sic] of Dr. Ronald T. Acton, PhD. (Geneticist) as Defendant's Expert Witness on State of Alabama's DNA Evidence." (Doc. 11-4, PageID.485). Two days later, the prosecution filed an "Objection to and Motion to Exclude Defense Expert Witness Ronald T. Acton," arguing that the notice was untimely, and that it failed to provide an expert report or a summary of Dr. Acton's opinion. (*Id.*, PageID.488-489). A report of Dr. Acton's opinions, dated March 5, 2017, was subsequently filed into the record. (See Doc. 11-5, PageID.524-525). The trial court heard the prosecution's motion to exclude Dr. Acton, among other pretrial matters, on March 6, 2017, prior to the start of jury

---

merits of that claim. *See id.* at 1516. Secondly, the state court's decision must rest solidly on state law grounds, and may not be 'intertwined with an interpretation of federal law.' *Id.* Finally, the state procedural rule must be adequate; *i.e.,* it must not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be 'manifestly unfair' in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine. *Id.* at 1517.").

[5] The undersigned explained the "cause and prejudice" standard in the order setting Brown's deadline to reply to the Respondent's answer. (*See* Doc. 15, PageID.2320-21 (quoting *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008)).

selection. (*See* Doc. 11-6, PageID.722-745). The court deferred ruling on the motion to exclude until after jury selection, at which time the court granted it "because of the failure to comply with the Rules of Criminal Procedure regarding discovery." (Doc. 11-7, PageID.972). Brown's third claim for relief is that trial counsel was ineffective by failing to properly give notice of intent to use Dr. Acton as an expert, resulting in the exclusion of his testimony.

Even assuming trial counsel performed deficiently in this regard, Brown fails to show that he was prejudiced by the exclusion of Dr. Acton's testimony. At trial, the prosecution's DNA expert, Patricia Boyd with the Alabama Department of Forensic Sciences, testified regarding the testing of genetic material taken from several items, including nail clippings from the victim James's right hand. With regard to that material, Boyd testified, in relevant part, as follows:

> So in the previous report, the DNA profile that was obtained from the right nail cuttings, item 1G, was a mixture of at least two individuals, at least one of which was male. So the major DNA profile detected from that item and the DNA profile of Mr. James match. Upon comparing Mr. Brown's known sample to that evidence item, it is interpreted that Mr. Brown is included as a potential minor contributor to the mixture of genetic traits detected in the right nail cuttings, item 1G. The probability of including a random, unrelated individual as a potential contributor to this mixture is approximately 1 of 421 Caucasian individuals, and 1 of 622 African-American individuals.

(Doc. 11-9, PageID.1444).[6] Additionally, the following exchange occurred on cross-examination of Boyd:

_____

[6] In its memorandum opinion on direct appeal, the ACCA summarized this testimony as follows: "Nail clippings from James's right hand had a mixture of DNA. The major

DEFENSE COUNSEL: What about the alleles that Mr. Brown possesses that were not in the nail cuttings?

BOYD: Mr. Brown was included as a potential minor contributor. And it is true that some of Mr. Brown's DNA types were not present, but that is expected based on the amount of the potential minor contributor contributing to the sample in much smaller amounts, and so it's not unexpected that we do not detect full information regarding a minor contributor to the sample.

DEFENSE COUNSEL: What does that mean?

BOYD: So, again, the mixture obtained from right nail cuttings…was a resolvable mixture with the major component detected in higher amounts than the minor component. And, so, there was full information with regards to the major contributor to that sample, but because of the smaller amount of DNA detected regarding the minor contributor, there was not full information regarding that minor contributor.

(Doc. 11-9, PageID.1474-1475).

While Brown's petition alleges that Dr. Acton would have refuted Boyd's testimony regarding the genetic material found on the victim's nail clipping, Dr. Acton's report was actually consistent with Boyd's testimony. With regard to that genetic material, Dr. Acton's report states:

The DNA profiles generated for the Rt. Nail Cuttings (Item 1G) are a mixture of DNA profile from two or more individuals. Joe Lee Brown possesses alleles at several loci that are not present in the DNA profiles from the Rt. Nail Cuttings (Item 1G). Thus Joe Lee Brown can be excluded as having contributed his genes to the DNA profile from the Rt. Nail Cuttings (Item 1G).

(Doc. 11-5, PageID.525).

---

DNA profile matched James's DNA, and Brown was included as a possible minor contributor." (Doc. 11-15, PageID.1886).

Dr. Acton's opinion that Brown "can be excluded" from the DNA profile taken from the nail clippings is consistent with Boyd's testimony that Brown was only a "potential" contributor to the genetic mixture taken from the fingernails—in essence, both DNA experts stated that Brown might have, but did not definitely, contributed some of the genetic material found on the victim's fingernails. The rest of Dr. Acton's report mostly agreed outright with Boyd's other DNA findings,[7] Brown's present petition alleges no additional facts indicating other matters to which Dr. Acton might have testified. Thus, Brown has failed to show that "it is reasonably likely the result would have been different" had Dr. Acton been permitted to testify. *Harrington*, 562 U.S. at 111. Because Brown has failed to show that any error by trial counsel resulting in the exclusion of Dr. Acton prejudiced Brown, he is due no relief on his third claim.

## CLAIM 4 – Ineffective Assistance of Counsel by Failing to Prevent or Object to References to Brown's Drug Use at Trial

Brown's fourth claim for relief is that his trial counsel was ineffective for not filing a motion in limine to preclude references to Brown's past drug use, not making timely objections when references to Brown's past drug use were made, and by introducing references to Brown's past drug use. The ACCA expressly affirmed the denial of this claim in Brown's Rule 32 proceedings on two separate grounds: (1) it was

---

[7] While Dr. Acton did opine that "the frequencies in which the genetic traits observed on the Stain from Red Shirt (Item 2A) are estimated to appear in unrelated Caucasia and unrelated African American individuals are inflated[,]" he nevertheless agreed that the DNA profile detected on "the Stain from Red Shirt (Item 2A) is consistent with the DNA profile of Joe Lee Brown[, and t]hus Joe Lee Brown cannot be excluded as having contributed his DNA to this evidence item." (Doc. 11-5, PageID.525).

precluded by Alabama Rule of Criminal Procedure 32.2(d) ("Any claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable.") because "Brown could have, but did not raise this claim in his motion for new trial or on direct appeal when he raised other ineffective-assistance-of-counsel claims[;]" and (2) it was "insufficiently pleaded" under Alabama Rules of Criminal Procedure 32.3 and 32.6(b) because "Brown merely stated that this failure of counsel was 'actual error that severely prejudiced Mr. Brown in the eyes of the jury.'" (Doc. 11-27, PageID.2263).

First, the undersigned agrees with the respondent that this claim is procedurally defaulted. Rule 32.2(d) is sufficiently analogous to Rule 32.2(a)(5), in that both require a defendant to raise a claim at least on direct appeal when it is possible to do so, and as noted previously, Rule 32.2(a)(5) has been found to be an "independent and adequate state-law ground to reject [a] claim" that can procedurally bar a claim from federal habeas review. *See also Capocci v. Stewart*, No. CV 16-0507-WS-M, 2017 WL 373452, at *5 (S.D. Ala. Jan. 25, 2017) (Steele, J.) (holding that Rule 32.2(d) was an "independent and adequate state-law ground to reject [a] claim" resulting in procedural default), *certificate of appealability denied*, No. 17-10875-G, 2017 WL 7833763, at *3 (11th Cir. Aug. 31, 2017) (single-judge order) ("Mr. Capocci procedurally defaulted his claim. As shown above, Mr. Capocci had the obligation, and opportunity, to raise the claim on direct appeal and declined that opportunity, and therefore, his claim has been procedurally defaulted. *See*…Ala. R. Crim. P. 32.2(d)."). Brown offers no argument why Rule 32.2(d) was not adequate and independent, nor

does he attempt to show cause and prejudice to excuse the procedural default of this claim. While he does attempt to excuse the default by claiming that he is "actually innocent" of his crime of conviction, as will be explained later, Brown has failed to make a sufficient showing of actual innocence to excuse procedural default.

Second, the ACCA's alternative holding that Brown had failed to sufficiently plead this ineffective-assistance claim—specifically, because he "failed to plead more than a bare allegation that prejudice occurred" (Doc. 11-27, PageID.2264)—was an adjudication of that claim on the merits,[8] and Brown has failed to show that this decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States…" 28 U.S.C. § 2254(d)(1). It is well recognized that a "petitioner's burden of demonstrating prejudice [under *Strickland*] is high[,]" *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002), and " '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' " *Id.* (quoting *Strickland*, 466 U.S. at 693). Instead, "*Strickland* asks whether it is reasonably likely the result would have been different[, and t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111–12. The ACCA, then,

---

[8] The Eleventh Circuit has held that "an Alabama court's consideration of the sufficiency of the pleadings concerning a federal constitutional claim contained in a Rule 32 petition necessarily entails a determination on the merits of the underlying claim; [thus, courts] cannot construe such a rule to be a state procedural bar that would preclude [federal habeas] review." *Borden v. Allen*, 646 F.3d 785, 816 (11th Cir. 2011). *See also id.* at 813 ("[A] summary dismissal of a federal claim by Alabama courts for failure to comply with Rule 32.6(b) is…a ruling on the merits.").

was not unreasonable in concluding that a bare allegation of prejudice, without more, was insufficient to satisfy *Strickland.*

Third, the trial transcript indicates that counsel's performance in this regard was not deficient. In a trial transcript spanning almost 700 pages, Brown cites only 5 pages containing testimony related to his drug use. (*See* Doc. 5, PageID.65). All but one of the drug references were made during the testimony of State witness Marcus Thomas, and reading the comments in context, it is apparent that trial counsel made the reasonable strategic decision that the drug references could also have the effect of diminishing Thomas's credibility, since they showed that he was also a drug user. As for the last cited drug reference, that involved a passing comment made by one of the defense witnesses during a narrative answer to one of trial counsel's questions, and it was reasonable for trial counsel not to object to his own witness's statement, both to preserve her credibility and to not highlight the reference to the jury. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance…"); *Chandler*, 218 F.3d at 1315 ("The reasonableness of a counsel's performance is an objective inquiry…[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show

that the conduct was unreasonable, a petitioner must establish that *no* competent counsel would have taken the action that his counsel did take." (emphasis added)).

## CLAIM 5 – Confrontation Clause Violation

Brown's fifth claim for relief is that the trial court violated his constitutional Confrontation Clause rights when it denied him the chance to present a full defense by not allowing counsel to confirm with the State's DNA expert that she could not conclusively state the origin of the victim's alleged DNA. Specifically, he alleges:

> [D]efense counsel was attempting to get Patricia Boyd, the State's forensic science expert who performed the DNA analysis of Jeremy James to confirm that she did not collect any of the samples, so, therefore, she could only speculate that they were, in fact, drawn from outside places and not from the body of Mr. James himself. However, the trial court sustained an objection and prevented defense counsel from doing so, citing prior testimony as a basis for this action. (R. at 876-77). This was error and it was not harmless. Ms. Boyd admitted that she did not personally collect any samples from the victim. Therefore, had defense counsel been allowed to continue, it would have been established that Boyd's findings had to inevitably rely on the State's assertions as to where the DNA evidence that she tested came from. This would have undermined her credibility to the jury, as it proves that state forensic experts are there to support the state's theory of the case and not merely provide independent and detached medical analysis. Moreover, cutting off this line of questioning prevented Mr. Brown from fully exercising his rights under the Confrontation Clause to cross-examine this crucial state witness, and, consequently, undermined his ability to put on a defense.

(Doc. 5, PageID.66-67).

First, the undersigned agrees with the Respondent that Brown's Confrontation Clause claim is procedurally barred. The ACCA expressly affirmed the denial of this claim in his Rule 32 proceedings under Rule 32.2(a)(5) because it "could have been,

but was not, raised on appeal." (*See* Doc. 11-27, PageID.2262). As noted previously, Rule 32.2(a)(5) is considered an "adequate and independent state ground" for denying a claim barring federal habeas relief, Brown offers no argument why that ground was not adequate and independent, and he has not attempted to show cause and prejudice to excuse the procedural default of this claim. While he does attempt to excuse the default by claiming that he is "actually innocent" of his crime of conviction, as will be explained later, Brown has failed to make a sufficient showing of actual innocence to excuse the procedural default.

Nevertheless, Brown's Confrontation Clause claim is also without merit. The United States Supreme Court has explained:

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, *Pointer v. Texas,* 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965), "means more than being allowed to confront the witness physically." *Davis v. Alaska,* 415 U.S., at 315, 94 S. Ct., at 1110. Indeed, " '[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*' " *Id.,* at 315–316, 94 S. Ct., at 1110 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original). Of particular relevance here, "[w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis, supra,* at 316–317, 94 S. Ct., at 1110 (citing *Greene v. McElroy,* 360 U.S. 474, 496 79 S. Ct. 1400, 1413, 3 L. Ed. 2d 1377 (1959)). It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the

issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed…, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S. Ct. 292, 295, 88 L.Ed.2d 15 (1985) (*per curiam* ) (emphasis in original).

*Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

In *Van Arsdall*—the sole case to which Brown cites in support of his Confrontation Clause claim—the Supreme Court held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " *Id.* at 680 (quoting *Davis*, 415 U.S. at 318). However, "[n]ot every limitation on cross-examination violates the Confrontation Clause. '[T]he Sixth Amendment does not require unlimited inquiry into the potential bias of a witness. As long as sufficient information is elicited from the witness from which the jury can adequately assess possible motive or bias, the Sixth Amendment is satisfied.' " *De Lisi v. Crosby*, 402 F.3d 1294, 1301 (11th Cir. 2005) (quoting *United States v. Lankford*, 955 F.2d 1545, 1549 n.10 (11th Cir. 1992)).

At trial, the following exchange occurred during Boyd's cross-examination by Brown's counsel:

DEFENSE COUNSEL: So did you collect any DNA samples from, say, a known source other than on his body that was associated with Jeremy James?

BOYD: I did not collect any samples for this case at all.

DEFENSE COUNSEL: So there's no way you can conclude conclusively that the source that was collected from his body during the autopsy, that it could have been DNA that was associated with some other person?

PROSECUTION: Judge, I'm going to object. Dr. Hart testified the bloodstain card –

THE COURT: I'll sustain that, because we've had testimony that it came from the body of Jeremey [sic] James, and it has now been admitted into evidence. And, so, there is no other evidence other than that it was the blood of Jeremy James, which formed the basis for this lady's tests. So I'll sustain the objection for that reason.

(Doc. 11-9, PageID.1479-1480).

No Confrontation Clause violation occurred because, as the trial transcript reveals, Brown's counsel was stopped not from eliciting "facts from which jurors could appropriately draw inferences relating to [Boyd's] reliability[,]" but rather was stopped from asking Boyd to testify to an inference from that could be drawn from those facts. Brown's counsel successfully got Boyd to admit that she collected none of the DNA samples she tested herself; thus, "sufficient information [wa]s elicited from the witness from which the jury c[ould] adequately assess [the] possible…bias" Brown's counsel wanted to emphasize. *De Lisi*, 402 F.3d at 1301.

Moreover, the inference Brown wanted the jury to draw—that "Boyd's findings had to inevitably rely on the State's assertions as to where the DNA evidence that she tested came from"—would not have been reasonable in light of other trial

testimony. Specifically, before Boyd's testimony, Dr. Eugene Hart, a medical examiner who was, like Boyd, with the Alabama Department of Forensic Sciences, testified to conducting an autopsy of the victim, during which he took the fingernail clippings (State's Exs. 11 and 12) and a bloodstain card (State's Ex. 20) from the victim. (*See* Doc. 11-9, PageID.1313, 1318-1319). Dr. Hart testified to sealing the bloodstain card in a specially marked envelope, and he also testified that he "marked" the nail clippings. (*Id.*, PageID.1319-1320). Those exhibits were all admitted into evidence (*see id.*, PageID.1318-1320), and Boyd later identified those exhibits as the items she tested, recognizing her initials on each (*see id.*, PageID.1422-1425). Brown points to no testimony or other evidence in the record calling into question Dr. Hart's truthfulness, or the chain of custody between Dr. Hart taking the DNA samples from the victim's body and Boyd testing them. Thus, the inference that there was "no way [Boyd] c[ould] conclude conclusively" that the DNA samples were taken from James's body was speculative at best.

## CLAIM 6 – Cumulative Error

Brown's sixth claim for relief is that, even if trial counsel's alleged errors do not warrant relief individually, their cumulative effect rendered his trial constitutionally infirm. *See United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) ("The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." (quotation omitted)), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165

L. Ed. 2d 224 (2006). In the appeal of Brown's Rule 32 proceedings, the ACCA affirmed

that Brown "was not entitled to relief on" his cumulative-error claim, based on the

following reasoning from one of its prior decisions, *Taylor v. State*, 157 So. 3d 131 (Ala.

Crim. App. 2010) (*see* Doc. 11-27, PageID.2265-2266):

> Taylor also contends that the allegations offered in support of a claim of
> ineffective assistance of counsel must be considered cumulatively, and he
> cites *Williams v. Taylor,* 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389
> (2000). However, this Court has noted: "Other states and federal courts
> are not in agreement as to whether the 'cumulative effect' analysis
> applies to *Strickland* claims"; this Court has also stated: "We can find no
> case where Alabama appellate courts have applied the cumulative-effect
> analysis to claims of ineffective assistance of counsel." *Brooks v. State,*
> 929 So.2d 491, 514 (Ala. Crim. App. 2005), *quoted in Scott v. State,* [Ms.
> CR–06–2233, March 26, 2010] —— So.3d ——, —— (Ala. Crim. App.
> 2010); see also *McNabb v. State,* 991 So.2d 313, 332 (Ala. Crim.  App.
> 2007); and *Hunt v. State,* 940 So.2d 1041, 1071 (Ala. Crim. App. 2005).
> More to the point, however, is the fact that even when a cumulative-effect
> analysis is considered, only claims that are properly pleaded and not
> otherwise due to be summarily dismissed are considered in that analysis.
> A cumulative-effect analysis does not eliminate the pleading
> requirements established in Rule 32, Ala. R. Crim. P. An analysis of
> claims of ineffective assistance of counsel, including a cumulative-effect
> analysis, is performed only on properly pleaded claims that are not
> summarily dismissed for pleading deficiencies or on procedural grounds.
> Therefore, even if a cumulative-effect analysis were required by Alabama
> law, that factor would not eliminate Taylor's obligation to plead each
> claim of ineffective assistance of counsel in compliance with the
> directives of Rule 32.

157 So. 3d at 140.

The ACCA's suggestion that the cumulative error doctrine does not apply to

claims of ineffective assistance was not an unreasonable application of clearly

established law, since, as the Eleventh Circuit has noted, "the Supreme Court has not

addressed the applicability of the cumulative-error doctrine in the context of ineffective-assistance-of-counsel claims…" *Wood v. Sec'y, Dep't of Corr.*, 793 F. App'x 813, 818 (11th Cir. 2019) (per curiam) (unpublished).[9] Moreover, of the three ineffective-assistance claims Brown has asserted in his present petition, the undersigned has determined that trial counsel did not perform deficiently for two of them, and has only assumed error for the third. "Where there is no error or only a single error, there can be no cumulative error." *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). Accordingly, Brown's claim of cumulative error is without merit.

## CLAIM 7 – Actual Innocence

Brown's seventh, and last, claim for relief is that he "is actually innocent of murder…" To the extent Brown asserts this as a stand-alone habeas claim, Eleventh Circuit "precedent forbids granting habeas relief based upon a claim of actual innocence,…at least in non-capital cases" like this one.[10] *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007) (citing *Brownlee*, 306 F.3d at 1065). To the extent Brown is asserting this claim to excuse the procedural default of his other claims, he falls far short of making the requisite showing entitling him to such relief.

---

[9] The Eleventh Circuit has also "recognized that a cumulative-error claim may not be cognizable in a federal habeas case based on the current state of Supreme Court precedent." *Wood*, 793 F. App'x at 818 (citing *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 & n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law.")
.
[10] There is no indication that Brown was charged with capital murder. Instead, Brown was sentenced to life without parole under Alabama's habitual offender law.

> Even without cause and prejudice, the procedural default of a
> constitutional claim may be excused if enforcing the default would result
> in a fundamental miscarriage of justice. This exception applies if the
> petitioner can show that, in light of new evidence, it is probable that no
> reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298,
> 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995). By making this
> showing of actual innocence, the petitioner may overcome the procedural
> default and obtain federal review of the constitutional claim. *Id.*

*Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008).

"To be credible, such a claim requires petitioner to support his allegations of
constitutional error with new reliable evidence—whether it be exculpatory scientific
evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not
presented at trial." *Schlup*, 513 U.S. at 324. The Supreme Court has "caution[ed],
however, that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not
meet the threshold requirement unless he persuades the district court that, in light of
the new evidence, no juror, acting reasonably, would have voted to find him guilty
beyond a reasonable doubt.' " *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S. Ct. 1924,
185 L. Ed. 2d 1019 (2013) (quoting *Schlup*, 513 U.S. at 329). The Court
"stress[ed]…that the *Schlup* standard is demanding" and that "[t]he gateway should
open only when a petition presents 'evidence of innocence so strong that a court cannot
have confidence in the outcome of the trial unless the court is also satisfied that the
trial was free of nonharmless constitutional error.' " *Id.* at 401 (quoting *Schlup*, 513
U.S. at 316).

While Brown's petition acknowledges this standard (*see* Doc. 5, PageID.69), he
does not even allege the existence of, much less present, "new reliable evidence" to

support a showing of actual innocence.[11] Accordingly, Brown has failed to excuse the procedural default of his claims.

As all of Brown's claims for relief are without merit and/or procedurally barred, his present operative habeas petition (Doc. 5) is due to be **DENIED** and **DISMISSED with prejudice**.

### c.    CERTIFICATE OF APPEALABILITY

For habeas petitions brought by persons in state custody, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."  28 U.S.C. § 2253(c)(1)(A).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Where habeas relief is denied on procedural grounds without reaching the merits of the underlying constitutional claim(s), "a COA

---

[11] A petitioner's own self-serving assertions of innocence are insufficient to support an actual innocence claim, since a reasonable juror can discount the petitioner's own testimony in support of his cause. *Pope v. Dunn*, No. CV 16-00552-CG-N, 2018 WL 2275260, at *12 (S.D. Ala. Jan. 18, 2018), *report and recommendation adopted*, 2018 WL 2275246 (S.D. Ala. May 17, 2018) (citing cases).

should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id. See also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)). For all cases, "[a] certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). While "a COA does not require a showing that the appeal will succeed[,]" a "prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 337-38 (quotations omitted).

Upon due consideration, the undersigned finds that Brown should be **DENIED** a certificate of appealability in conjunction with the dismissal of the present habeas action because he has failed to make a substantial showing of the denial of a constitutional right. Moreover, for those claims that were found to be procedurally

barred, jurists of reason would not find it debatable whether the Court was correct in these procedural rulings.[12]

### III.   CONCLUSION & RECOMMENDATIONS

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Brown's operative petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 5) be **DENIED** and **DISMISSED with prejudice**, that the Court **DENY** Brown a Certificate of Appealability in connection with this dismissal, and that this final judgment be set out in accordance with Federal Rule of Civil Procedure 58.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts; S.D. Ala. Gen LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a

---

[12]    Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection by the petitioner to the recommendation to deny a certificate of appealability, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Should this Court ultimately deny a certificate of appealability, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **12th** day of **February 2024**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**